## STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ERNEST CRUMEDY, JR., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 13, 1976—Decided September 22, 1976.

Before Judges CARTON, KOLE and LARNER.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for defendant-appellant (*Mr. Edward J. Dimon,* Assistant Deputy Public Defender, of counsel and on the brief).

*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney for plaintiff-respondent (*Mr. David B. Glazer,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

LARNER, J. A. D.   Defendant was convicted by a jury of three counts of atrocious assault and battery relating to three individuals (*N. J. S. A.* 2A:90–1), two counts of obtaining money by false pretense (*N. J. S. A.* 2A:111–1) and one count of attempt to obtain money by false pretense (*N. J. S. A.* 2A:111–1 and 2A:85–5). The court imposed a sentence of six consecutive three-month terms in the Essex County Correction Center.

Defendant asserts the following grounds of appeal: (1) Evidence was insufficient to sustain the convictions for atrocious assault and battery; (2) Court erred in its supplemental charge in response to jury's question relating to the elements of the offense of atrocious assault and battery; (3) Prosecutor's comments on opening and summation were inflammatory and denied defendant a fair trial; (4) Ineffective assistance of counsel; and (5) Invasion of Fifth Amendment privilege by questions addressed to the arresting officer which were excluded by the court on objection by defendant.

Defendant's principal ground of appeal is focused upon the validity of the convictions for atrocious assault and battery. We have considered the other grounds of appeal advanced in defendant's brief and find them to be clearly without merit. *R.* 2:11–3(e)(2). As a consequence this opinion will deal with the only meritorious issue, namely, that relating to the charges of atrocious assault and battery.

The evidence reflects a bizarre set of facts. Defendant engaged in a common practice of approaching the victims either at their homes or on the street and falsely representing himself to be a physician and/or representative of Blue Cross or Beth Israel Hospital. He convinced these individuals that they had to submit to certain tests and treatment either for cancer or sickle cell anemia and in some

instances he requested and obtained a fee for his services. The convictions for atrocious assault and battery related to three victims: Mary Jackson, Gregory Carter and Eddie Rodgers.

Mary Jackson testified that on August 21, 1974 defendant came to her apartment and introduced himself as a representative of Beth Israel Hospital. He stated that he had a report on her from the hospital and was there to take some tests for cancer. She consented to the tests only after he threatened to get a warrant to force her to cooperate. He then removed bottles, needles and other items from his brief case and proceeded to insert a needle in a vein in each arm, like taking a "blood test." This caused some minor bleeding. He advised her that she had cancer of the blood cells.

Defendant requested that Mrs. Jackson undress from the waist down and when she complied, he inserted "a silver x-ray machine" (identified as a flashlight) into her vagina. He then proffered his professional advice that she would require weekly treatments for eight months at $10 a week, and that the treatment would include "a lot of sex." Mrs. Jackson stated that she had no money at the time whereupon defendant said he would return two days later. The next day Mrs. Jackson went to Beth Israel Hospital and to her personal physician. Subsequently she saw defendant on the street and called the police.

Gregory Carter was on the street on August 27, 1974 when defendant approached him and said he was giving tests for sickle cell anemia. He presented documents identifying himself as a representative of Blue Cross-Blue Shield. Carter consented, whereupon defendant secured a needle wrapped in a paper and inserted it in the victim's arm. There was no bleeding or other ill-effects.

Eddie Rodgers, an 11-year-old boy, also testified that defendant approached him and represented that he was testing everyone for sickle cell anemia. A piece of rubber was placed

around the boy's arm and a pin or needle was inserted in his finger causing some minor bleeding.

Defendant's motion for judgment of acquittal on the three counts of atrocious assault and battery was denied. He contended at the trial and contends on appeal that the foregoing evidence, taken in its optimum light in favor of the State, fails to support the charge upon which he was convicted. The thrust of his argument is that the facts do not spell out the requisite elements of the crime of atrocious assault and battery, but rather rise no higher than the disorderly persons offense of simple assault and battery.

*N. J. S. A.* 2A :90–1 provides:

Any person who commits an atrocious assault and battery by maiming or wounding another is guilty of a high misdemeanor.

The trial court submitted to the jury the issue of guilt under this statute as well as the lesser included offense of simple assault and battery, with proper instructions as to the definition of each offense. Subsequent questions from the jury, focusing upon the elements of atrocious assault and battery, produced clarifying instructions from the court. No objection was made either to the main charge or the supplemental charge. And ultimately the jury found from the facts that defendant was guilty of the aggravated offense.

In our opinion the evidence warranted submission to the jury of the issue of guilt of atrocious assault and battery.

The statute has been interpreted in broad terms to connote more than an unwarranted assault accompanied by a battery or a touching. In *State v. Zelichowski,* 52 *N. J.* 377, 384 (1968), the Supreme Court defined the crime as "an intentional wounding or maiming through a 'savagely brutal' attack." In *State v. Edwards,* 28 *N. J.* 292, 297 (1958), the court emphasized that the nature of the attack is of paramount importance, although "[t]he kind and severity of the injuries inflicted is another factor to be taken into consideration." See also, *State v. McGrath,* 17 *N. J.* 41, 49

(1954). The particular statute on atrocious assault and battery is intended to penalize the "vicious act" of the defendant rather than his evil purpose. See *State v. Maier,* 13 *N. J.* 235, 240–243 (1953), wherein the court also analyzed the legislative intent in adopting the statutes relating to aggravated assaults (*N. J. S. A.* 2A:90–1, 2 and 3) in contradistinction to the single common-law offense of assault and battery.

*State v. Riley,* 28 *N. J.* 188 (1958), app. dism. and *cert.* den. 359 *U. S.* 313, 79 *S. Ct.* 891, 3 *L. Ed.* 2d 832, *cert.* den. 361 *U. S.* 879, 80 *S. Ct.* 166, 4 *L. Ed.* 2d 117 (1959), further demonstrates a judicial construction of the statute in a realistic rather than literal manner so as to encompass a severe physical beating within the statutory language of "wounding" even in the absence of a breaking of the skin. Significantly, the court noted:

> It would be impracticable to endeavor to spell out a precise rule which would, *in futuro*, automatically decipher the difference on all occasions between simple assault and battery and atrocious assault and battery no matter what the facts might be. [28 *N. J.* at 199–200]

A perusal of the opinions of recent vintage indicates that most of them hark back to the earlier case of *State v. Capawanna,* 118 *N. J. L.* 429 (Sup. Ct 1937), aff'd 119 *N. J. L.* 337 (E. & A. 1938), for a definition of the amorphous language of "atrocious assault and battery." In *Capawanna* the court submitted the following all-embracing definition:

> * * * [W]e conclude that where the maiming or wounding is done by an assault and battery that is savagely brutal or outrageously or inhumanly cruel or violent, it amounts to an atrocious assault and battery within the intendment of our law. [118 *N. J. L.* at 432]

■ Based upon a synthesis of the prior precedents to which we have referred, we find that a fact issue was presented which authorized a finding that the facts underlying each of the three charges spelled out the offense of atrocious assault and battery. In each case the consent of the victim

was obtained through fraudulent representations, thereby rendering the act wilful and intentional. In each case the combination of the extraordinarily vicious character of defendant's fictitious pose and the potential effect upon the victim's health by the unwarranted invasion of his or her body by a medical or other instrument amply demonstrates outrageous and inhumanly cruel conduct. In fact, the outrageous character of defendant's acts is underlined by the cruel advantage taken by him of individuals who may not have had the education or sophistication to repulse his advances. The statutory prerequisite is further satisfied by the fact that in each instance defendant punctured the skin by his injection of a needle, which manifestly constitutes a "wounding."

In our view, the absence of any serious physical injuries or consequences is not determinative of the commission of an atrocious assault and battery. Such consequences are properly a factor to be considered. Nevertheless each case must be judged on its facts. And the aggravated element of the assault in this case lies in the vicious or evil nature of the attack, which is as abhorrent as one which is violent in character. The fortuitous circumstance that there were no infections or serious sequelae to the unauthorized intrusion of unsterilized needles does not detract from the essence of the atrociousness — namely, the character of the act itself.

The court properly denied the motion for judgment of acquittal.

Affirmed.